**R. C. PAULL, Virginia Paull and Paull's Hatchery, Inc., Appellants,**

v.

**ARCHER-DANIELS-MIDLAND COMPANY, Appellee.**

**No. 17016.**

United States Court of Appeals Eighth Circuit.

Feb. 19, 1963.

James B. Blair and Courtney C. Crouch, of Crouch, Blair and Cypert, Springdale, Ark., made argument for appellants and J. E. Simpson, Berryville, Ark., was with them on the brief.

Wright W. Brooks, Minneapolis, Minn., made argument for appellee and Fitton & Adams, Harrison, Ark., were with him on the brief.

Before SANBORN and BLACKMUN, Circuit Judges, and REGISTER, District Judge.

REGISTER, District Judge.

This is an appeal from a judgment rendered by the District Court, following a hearing before that Court, which hearing was held subsequent to the issuance and filing of a mandate of this Court. See Archer-Daniels-Midland Company v. Paull, 8 Cir., 293 F.2d 389. In order to understand the present controversy, it is necessary to briefly summarize the factual background from which the same arises.

Archer - Daniels - Midland Company (hereinafter referred to as "ADM"), a corporation, initially brought this action in the spring of 1960 against R. C. Paull, Virginia Paull and Paull's Hatchery, Incorporated, to recover a substantial sum of money allegedly due on promissory notes signed or guaranteed by said appellants in connection with the furnishing by ADM of feed and medicine for turkeys raised by appellants in the year 1958, which business transaction arose from ADM's turkey financing program in northwest Arkansas for that year. In said action the defendants (appellants here) not only, by answer, denied any indebtedness to plaintiff (appellee here), but filed counterclaims for alleged breach of contracts to finance the raising of turkeys in the year 1959. ADM duly filed its answer to said counterclaims whereby it denied the existence of any indebtedness by it in favor of either of the defendants (counterclaimants). The case was tried to the Court which, following trial and the submission of briefs, filed a statement of the issues and

detailed findings of fact, conclusions of law, and memorandum opinion. 188 F. Supp. 277. Succinctly stated, the controverted issues before the trial court were whether ADM had entered into complete and binding oral contracts to finish the financing as alleged in the counterclaims, and, if so, whether ADM's failure to perform " * * * entitled the counterclaimants to damages measured by the profits they might or would have made had the contracts been fully performed by ADM". 293 F.2d 392. In this original action, ADM's right to recover on the promissory notes was not disputed; the sole issues therein related to the counterclaims. By its judgment (which was entered on October 26, 1960) the trial court determined that the alleged oral contracts had been entered into and had been breached by ADM and that counterclaimants were entitled to damages measured by the standard referred to. From that judgment ADM appealed to this Court. The basis of its appeal was twofold—(1) "that there was an inadequate evidentiary basis for the finding that it entered into the alleged contracts * * * " and (2) "that, if the finding that ADM entered into the alleged contracts is sustained, there is an insufficient factual and legal basis for the damages awarded R. C. Paull and Paull's Hatchery, Inc., upon their counterclaims." 293 F.2d pp. 392–393.

While this Court affirmed the finding of the trial court as to (1) above, it sustained ADM's challenge of the trial court's award of damages for profits allegedly lost because of the failure of ADM to fulfill its alleged contracts to finance turkey-raising programs of the counterclaimants during 1959, and held that under the evidence and the applicable substantive law of Arkansas, ADM could not be held legally liable in damages for profits which the trial court found the counterclaimants would have earned had ADM carried out its contracts to finance their turkey-raising programs in 1959. This Court, in its discussion concerning the issue of damages, stated in part as follows:

"It is not conceivable to us that at the time the contracts asserted in the counterclaims were entered into the parties could have contemplated that there was any reasonable certainty that the fulfillment of the contracts would result in profits. * * It seems obvious to us from the evidence that the raising of turkeys is not a stable business but a speculative one, and that profits depend upon many factors, including management, market conditions, the health of the flocks, and other contingencies. * * *

"Concededly, the measure of damages for the breach of a contract to loan money is the difference between the agreed interest rate and that which would be required to procure the money elsewhere, not exceeding the highest rate permitted by law. See Columbian Mut. Life Assur. Soc. v. Whitehead, 193 Ark. 598, 101 S.W.2d 455."

The opinion of this Court, filed on August 4, 1961, concluded as follows:

"So much of the judgment as is appealed from is reversed, and the case is remanded for the ascertainment of whatever general damages may, under applicable Arkansas law and consistently with this opinion, be due to the defendants R. C. Paull and Paull's Hatchery, Inc., upon their counterclaims.

"Reversed and remanded."

Thereafter the defendants (appellants here) filed a petition for rehearing, which was duly denied, and this Court's mandate to the trial court was issued on September 27, 1961, and was filed therein on September 29, 1961.

On November 6, 1961, a hearing was had before the trial court to determine the terms to be incorporated in the judgment that was to be entered upon the opinion and mandate of this Court—a hearing apparently called because of disagreement of counsel as to the effect and extent of the mandate. At that hearing the trial court permitted appellants, over

objection of counsel for ADM, to introduce testimony to the effect that turkey raising in the area here involved is a stable and generally profitable business, and to the effect that, at the time ADM agreed to finance the turkey-raising programs of the appellants, the parties contemplated that profits were reasonably certain to result. At that hearing the trial court also permitted appellants, over appellee's objection, to introduce testimony by which they sought to establish the facts which would bring them within the expressed exceptions to the general rule as to the measure of damages for the breach of a contract to loan money, as stated in Whitehead, supra. The trial court permitted all of such testimony to be taken as an "offer of proof". In its opinion (reported at 199 F.Supp. 319) following that hearing the trial court stated, at page 323:

"The testimony that was introduced at the hearing clearly and unmistakably established three facts, viz.: (1) that it was in the contemplation of the plaintiff and the defendants at the time the contracts were entered into that all parties expected to make a profit; (2) that the growing, feeding and marketing of turkeys is not anymore hazardous or uncertain than countless other business enterprises; and (3) that because of the custom and practice of feed companies, as set forth in the trial court's first finding of fact, hereinbefore referred to, the defendants were unable to obtain sufficient financing to carry on the business which would have been carried on had the plaintiff not breached the contracts."

At said hearing evidence was also submitted relative to the issue of general damages allegedly suffered by the defendants. (appellants) because of the refusal of ADM to perform its contractual obligations. The trial court thereupon filed an Opinion wherein it held, in effect, that the judgment entered by it on October 26, 1960, should be vacated and set aside; that the general damages to which

Paull's Hatchery, Inc., was entitled was the sum of $10,000.00 (being the amount that the trial court found that such defendant had expended in preparing to perform its obligations under the contract); and that no general damages were suffered by the defendant R. C. Paull. The trial court subsequently filed its judgment in favor of ADM on the promissory notes originally sued upon, less the sum of $10,000.00 which the court allowed as general damages to Paull's Hatchery, Inc., as aforesaid, and for its costs on appeal.

From that judgment, which was entered on November 17, 1961, this appeal was taken. Appellants' contentions on this appeal are:

1. That the trial court erred in failing to grant Paull's Hatchery, Inc., more than $10,000.00 as general damages for ADM's breach of contract; and

2. That the trial court erred in failing to award damages to appellants, based upon loss of anticipated profits.

These contentions will be discussed and disposed of by us in reverse order to that in which they are submitted.

On the first appeal of this case to this Court, one of the specific issues was whether there was a sufficient factual and legal basis for the damages that the trial court had awarded R. C. Paull and Paull's Hatchery, Inc., upon their counterclaims. Our determination of that issue was adverse to appellants here. In the opinion of this Court, written after a meticulous examination of the record, we gave careful consideration to the trial court's discussion of the problem, and to the applicable general rules of law and also to the law of Arkansas relating thereto. In our discussion certain observations were made, including those expressed in the portions of our opinion hereinbefore quoted. (293 F.2d 397).

In that opinion, at page 397, we expressed our conclusion as follows:

"Our conclusion is that there was not an adequate basis in the evidence for a determination by the trial court that at the time ADM agreed

to finance the turkey-raising programs of the defendants-counterclaimants, the parties contemplated that profits were reasonably certain to result or that any anticipated profits were 'certain both in their nature and in respect to the cause from which they' were to 'proceed.' "

Of course the only evidence before us, which we concluded was inadequate to sustain the findings of the trial court, was that contained in the record of the trial giving rise to that appeal.

As heretofore stated, a petition for rehearing was thereafter filed—a petition which sought to reargue the question of whether the counterclaimants were entitled to recover alleged lost profits as damages. The petition was denied; our mandate followed.

Therefore, on the first appeal the issue here under discussion was specifically and distinctly put in issue and was directly and finally determined on the merits by this Court. In the proceedings before the trial court subsequent to the filing of our mandate, that court's jurisdiction and duties were specifically limited by the terms and conditions of said mandate. Much of the testimony submitted by appellants (defendants-counterclaimants below) at the hearing subsequent to the mandate was very obviously designed to contradict the observations contained in this Court's previous opinion (hereinbefore quoted), and to supplement the evidence which appeared in the record of the original trial relative to anticipation of profits by the parties at the time of the agreement, and to supplement the evidence which appeared in the record of the original trial as to whether, subsequent to the breach of the contract here involved, it was possible for appellants to obtain financing elsewhere (and hence bring themselves within the exceptions to the general rule, which general rule and exceptions thereto were both expressed in Whitehead, supra).

Appellant's patent purpose for introducing such testimony was that the evidence contained in the original record, together with such additional evidence, should furnish an adequate evidentiary basis upon which this Court would sustain the trial court's subsequent findings made in conformity therewith, and, in effect, reverse its former opinion. This is evident from the record and arguments of counsel, and is supported by the fact that the hearing of November 6, 1961, is referred to by counsel for appellants in their brief as "the second hearing", "the new hearing", "a partial retrial", "the retrial" and "the second trial". Counsel, in their brief, state:

"The trial court in the retrial was certainly forced by the overwhelming evidence including the testimony of ADM's own executive to make the finding of fact: 'The testimony that was introduced at the hearing solely and unmistakably established three facts, viz.: (1) That it was in the contemplation of the plaintiff and the defendants at the time the contracts were entered into that all parties expected to make a profit; * * *' " and, further:

"The evidence produced in the retrial conclusively showed that turkey growing was a stable business rather than a speculative one, * * *", and

"There was no evidence offered by the plaintiff, appellee to contradict this evidence, and therefore the trial court had apparently no choice but make as a finding of fact as a result of the retrial the fact which it did find: 'The testimony that was introduced at the hearing clearly and unmistakably established three facts, viz. * * * (2) that the growing, feeding and marketing of turkeys is not anymore hazardous or uncertain than countless other business enterprises'."

Appellants also refer at length to testimony of several witnesses who testified at the November 6, 1961, hearing relative to the question of whether, subsequent to the breach of said contract, it was possible for appellants to obtain financing elsewhere, which testimony was apparently the basis for the trial court's subse-

quent finding in favor of the appellants on that point. Appellants argue that "The evidence at the retrial amply sustained the trial court's finding that the feed was not available elsewhere", and, after quoting certain portions of the testimony of several witnesses on this point, conclude: "This testimony combined with the testimony of the first trial * * * conclusively shows that the appellant could not secure the feed or money to purchase the feed elsewhere."

From this testimony and finding, appellants contend that the exceptions to the general rule, rather than the general rule itself, as pronounced in the Whitehead case, supra, are applicable and that therefore, under the law of Arkansas as expressed by its Supreme Court in that case, appellants are in fact entitled to recover anticipatory profits as damages for breach of said contract.

We believe that the situation here presented to us is, in principle, similar to that which existed in Thornton v. Carter, 8 Cir., 109 F.2d 316, and that the opinion of this Court therein completely, clearly and effectively controls our determination of the issue here under discussion. In Thornton we said, at pp. 319–320:

"[1] There can be no question of the right of an appellate court of the United States, when it reverses a case, to direct the entry of the proper judgment or decree in the lower court and thus terminate the litigation upon the merits, (1) in an equity case; (2) in a jury-waived case submitted upon an agreed statement of facts; and (3) in a jury-waived case in which the trial court's findings of fact are sustained by the evidence and are complete, but its conclusions of law and judgment are erroneous.

"[2, 3]. When a case has been decided by this court on appeal and remanded to the District Court, every question which was before this court and disposed of by its decree is finally settled and determined. The District Court is bound by the decree and must carry it into execution according to the mandate. It cannot alter it, examine it except for purposes of execution, or give any further or other relief or review it for apparent error with respect to any question decided on appeal, and can only enter a judgment or decree in strict compliance with the opinion and mandate.

"[4–6] A mandate is completely controlling as to all matters within its compass but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal. Since, however, a final judgment upon the merits concludes the parties as to all issues which were or could have been decided (Guettel v. United States, 8 Cir., 95 F.2d 229, 230, 118 A.L.R. 1060 and cases cited), it is obvious that such a judgment of this court on appeal puts all such issues out of reach of the trial court on the remand of the case. That court is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of this court deciding the case. See Goldwyn Pictures Corp. v. Howells Sales Co., 2 Cir., 287 F. 100, 102. If a judgment or decree of this court which disposes of a case upon the merits has become final, no purpose can be served by considering whether it is right or wrong. A judgment which is wrong, but unreversed, is as effective as a judgment which is right.

"[7] After a case has been brought to this court and decided and a mandate has been issued to the court below, a second appeal brings up nothing for revision but the proceedings subsequent to the mandate; and 'there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate on chances from changes in its mem-

bers.' United States v. Camou, 184 U.S. 572, 574, 22 S.Ct. 505, 506, 46 L.Ed. 694. See, also, Pike Rapids Power Co. v. Minneapolis, St. Paul, etc. Ry. Co., 8 Cir., 106 F.2d 891, 894, and cases cited.

"[8] From what has been said, it is clear that Thornton's contention that he has a right to relitigate and reargue what has been finally decided by this court is frivolous."

■ We have quoted extensively from our opinion in Thornton because the legal principles therein expressed, relating to the legal effect of the mandate of this Court, are established law and we believe that their application to the situation which now confronts us is dispositive thereof.

Also see: Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Co., 8 Cir., 115 F.2d 1, 8, 139 A.L.R. 1490; Ohio Oil Co. v. Thompson, 8 Cir., 120 F. 2d 831, 834–835; McIntosh v. Wiggins, 8 Cir., 123 F.2d 316, 320–321; Herzberg's Inc. v. Ocean Accident & Guarantee Corporation, Ltd., 8 Cir., 132 F.2d 438, 440–441; Lack v. Western Loan & Building Co., 9 Cir., 155 F.2d 1020, 1021; Redditt et al. v. Hale et al., 8 Cir., 188 F.2d 832; Gunn v. United States, 8 Cir., 283 F.2d 358; Hartman v. Lauchli, 8 Cir., 304 F.2d 431; and Mallonee et al. v. Fahey et al., U.S.D.C., Calif., 117 F. Supp. 259, 270.

By the plain and unambiguous wording of our prior opinion, the case was "remanded for the ascertainment of whatever general damages may, under applicable Arkansas law and consistently with this opinion, be due to the defendants R. C. Paull and Paull's Hatchery, Inc., upon their counterclaims". By the mandate no privilege was given to the appellants (counterclaimants) to introduce additional evidence relating to their right to anticipated profits as damages or to have a "second hearing", or "new hearing", or "retrial' or "second trial" relative thereto—an issue which had been fully litigated and finally determined. By its language this Court specifically defined the limit and scope of the remand.

Clearly, the submission and taking of testimony relative to the right of appellants (counterclaimants) to damages based upon loss of anticipated profits, at the hearing of November 6, 1961, was contrary to both the letter and spirit of the mandate construed in the light of the opinion of this Court, and the trial court lacked power to make any effective finding based thereon. It is equally clear that appellants' (counterclaimants') contention that they have a right to reargue and relitigate what has been finally decided by this Court is frivolous.

Doubtless the trial court permitted the submission of the testimony on this point at the hearing on November 6, 1961, at the insistence of counsel, for it is apparent that said court fully recognized and understood its limited duty under the mandate. In the trial court's memorandum opinion following such hearing, it is stated: "This court recognizes that under the law of the case rule the decision of an appellate court is the law of the case on points presented and must be followed in all subsequent proceedings in that case.", and, "In admitting such testimony this court realized that it is bound by the mandate, and that it can only enter in this case such judgment as it was directed to enter by the mandate, * * *".

The trial court thereupon, in accordance with such law and its duty thereunder, properly proceeded to enter judgment "in accordance with the mandate".

For the reasons stated, we hold that this contention of the appellants is without merit.

Appellants' remaining contention is that the trial court erred in failing to grant Paull's Hatchery, Inc., more than ten thousand dollars as general damages for ADM's breach of contract.

The counterclaim of Paull's Hatchery, Inc., as pleaded, is as follows:

"1. That the plaintiff, Archer-Daniels-Midland Company, did covenant, contract and agree to purchase

or to provide financing for growers in order to enable said growers to purchase 90,000 turkey poults to be hatched by the defendant, Paull's Hatchery, Inc., in the year 1959; that 50,000 poults were to be purchased at a price of 50¢ per poult and 40,000 poults were to be purchased at a price of 50¢ per poult; that the Paull's Hatchery, Inc., pursuant to this contract, had breeder turkey flocks placed with growers, Frank Snyder, Ray Ross and Lex Smith and paid all expenses necessary to provide eggs to hatch the said 90,000 turkey poults; that in excess of 140,000 eggs were laid by said breeding flocks and brought to the hatchery owned by the defendant, Paull's Hatchery, Inc., and that the hatching of said eggs was undertaken but that the Archer-Daniels-Midland Company neglected, failed and refused to purchase or to provide financing for the purchase of said poults except for 4,600 poults which it purchased at 50¢ per poult.

"2. That the defendant, Paull's Hatchery, Inc., did everything necessary to perform said contract and was at all times ready, willing and able to perform and did perform its part of said contract agreement.

"3. That the defendant, Paull's Hatchery, Inc., was unable to sell or otherwise dispose of the poults hatched pursuant to said contract and was forced to destroy, by drowning, 40,000 turkey poults and other poults were given away or sold for nominal amounts and the unhatched eggs disposed of in a similar manner.

"4. That the breach, failure and refusal of performance by the plaintiff, Archer-Daniels-Midland Company, damaged this defendant, Paull's Hatchery, Inc., in the amount of $47,700.00."

ADM by its answer thereto denied that it was in any manner indebted to Paull's Hatchery, Inc. As regards the issue thus raised, the trial court, following trial, made the following finding of fact:

"Paull's Hatchery, Inc., was damaged by plaintiff's refusal to perform its contractual obligations to pay for 40,000 poults on behalf of the Poor Boy Feed Company as a part of its 1959 range turkey program in the amount of $17,200. This figure represents the contract price of 50 cents per poult for 40,000 poults, less the 12 cents per poult which the hatchery received for 20,000 poults sold in mitigation of damages, and less the 2 cents per poult boxing expense saved on the remaining 20,000 poults."

and conclusion of law:

"Paull's Hatchery, Inc., is entitled to recover from the plaintiff a total amount of $17,200.00."

Judgment thereon was entered accordingly; appeal was thereafter taken from this part of the judgment, and we reversed. Our mandate required the trial court to ascertain "whatever general damages may, under applicable Arkansas law and consistently with this opinion, be due to the defendants R. C. Paull and Paull's Hatchery, Inc., upon their counterclaims".

On this appeal appellants assert that the trial court, following trial on the merits, correctly applied as the rule of damages the contract price less mitigation of damages and that

" * * * Arkansas has frequently held that where there is a breach of contract to do or furnish something by the person who is to receive and pay for it, the measure of damages is the contract price less expense of performance not incurred and amount earned or price received elsewhere." Appellant's Brief, p. 17.

It is established that the "contract price" was $20,000.00, computed by multiplying the number of turkey poults (40,000) by the price per poult (50¢).

As the basis upon which the trial court determined that the general damages to which Paull's Hatchery, Inc., was entitled on its counterclaim ($10,000.00), following the November 6, 1961, hearing, that court stated that appellant had "expended $10,000.00 in preparing to perform its part of the contract". The undisputed testimony of R. C. Paull reveals that the actual cost to the hatchery of the production of a single turkey poult totalled 47 cents—making the total cost of producing 40,000 turkey poults the sum of $18,800.00.

 Any analysis or discussion by us of these respective rules is unnecessary and would be superfluous, as the sole objection by appellants relates to the alleged inadequacy of the trial court's award. Furthermore, as to which of such rules was correctly applied under the law of Arkansas, we consider wholly applicable, and reaffirm, the well established principle that was cogently stated by us in Homolla v. Gluck, 8 Cir., 248 F. 2d 731, 733, as follows: "* * * this Court has consistently refused to attempt to outpredict, outforecast or outguess a trial judge with respect to a doubtful question of the law of his State", which principle has been ofttimes repeated in subsequent opinions.

Under either the so-called "contract price less cost of completion" rule, or the so-called "expenditures in part performance" rule, appellee (ADM) would be entitled to credit for similar items in mitigation of damages. Such items, which were established by the evidence at the hearing following remand, included: $2,300.00 (the value of 4,600 turkey poults actually purchased by appellee ADM at 50¢ each), $2,400.00 (the value of 20,000 turkey poults sold at 12¢ each), and the reasonable value of 15,400 turkey poults produced by Paull's Hatchery, Inc., and taken over by R. C. Paull with Swift & Company financing.

We have carefully examined the record and are satisfied that under either rule above referred to, the finding and award of $10,000.00 as general damages in favor of Paull's Hatchery, Inc., on its counterclaim, is not arbitrary or inadequate or insufficient as a matter of law, or unsupported by substantial evidence.

The judgment appealed from is affirmed.