**NATIONAL AIRLINES, INCORPORATED, Plaintiff-Appellee,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS et al., Defendants-Appellants.**

No. 29234.

United States Court of Appeals, Fifth Circuit.

July 15, 1970.

Rehearing Denied and Rehearing En Banc Denied Aug. 19, 1970.

Plato E. Papps, Bernard Dunau, Washington, D. C., Jos. P. Manners, Richard M. Gale, Miami, Fla., for defendants-appellants.

William B. Killian, Jerry B. Crockett, Miami, Fla., for plaintiff-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

This is the second appeal in a dispute arising from the mass discharge by National Airlines, Inc. of wildcat strikers while "freeze" provisions of the Railway

Labor Act were in effect.[1] In the first appeal, taken by the union from the denial of a temporary injunction, National Airlines, Inc. v. International Ass'n of M.&A.W., 416 F.2d 998 (5th Cir. 1969), this court held that National had exceeded the permissible bounds of self-help and remanded to the District Court. National's position in that appeal was that it could, without more, discharge employees engaged in a wildcat strike and thereby terminate their right to reinstatement. We pointed out that this failed to take into account the Railway Labor Act's explicit ban on self-help during the "freeze" period, but that self-help was not absolutely prohibited.

> * * * We therefore hold that the carrier's resort to self-help was justified only to the extent necessary to restore service; its exercise was allowable only in so far as it served that end.

We do not think the mass discharge of the strikers in this case can be justified by the need to restore service. We recognize that the district court was faced with a difficult situation and had little time to deal with it. It is plain that the court's central concern was the restoration of the *status quo*. Nevertheless, we hold that the discharge of the strikers constituted an impermissible form of self-help. The discharge of the strikers was not necessary in order to hire a new labor force.

416 F.2d at 1006.

Quite plainly, this court said that self-help was allowable—to the extent necessary to restore service—but that restoration of service did not require the mass discharges. Thus, having rejected the outer limits for discharges urged by National, i.e., mass discharge of the strikers, we defined a narrow outer limit:

> * * * [R]eplacement of the strikers, but not discharge, would seem compatible with the need to restore service. It follows that those

strikers whose positions were filled either at the time of the discharge or before the time the strike would have run its course are *not* entitled to reinstatement. On the other hand, strikers for whom no replacements had been found when the strike probably would have ended *are* entitled to reinstatement from the time they would have returned to work. This will require a factual determination on remand of the point in time when the strikers would have returned to work, e.g., the date the three suspended employees in New York returned to work. The strikers, who are in a better position to cast light on this issue, should carry the burden to show when they would have returned to work in the absence of the discharge. Strikers who had not been replaced at that time, as revealed by company records, are entitled to reinstatement.

416 F.2d at 1007. In concluding, this court summarized its position in this way:

> * * * We further hold, however, that the mass discharge of the strikers exceeded the permissible bounds of employer self-help under the circumstances. National was entitled only to hire replacements for the strikers in order to operate its airline. The district court on remand should determine the precise extent to which the carrier exceeded the permissible bounds of self-help, as defined here, and determine the right of the strikers to reinstatement accordingly.

416 F.2d at 1007. The permissible bounds of self-help was "as defined here," and we had defined it as not including mass discharges, but limited to employing replacements to the time the strike would have ended.

On remand the District Judge considered the permissible limits of self-help to be an issue for him to determine *vel non*. He took evidence and found that National could not have hired a new labor force to continue operating if it had

1. 45 U.S.C. § 156.

not discharged the strikers en masse. Since self-help was authorized to continue operating, he concluded that no strikers were entitled to reinstatement. He held that the conclusion of this court that the mass discharge exceeded the bounds of self-help was not supported on the record as developed on remand.

■ The District Judge erred in his conception of the mandate of the prior appeal by which he was, of course, bound. In re United States, 207 F.2d 567 (5th Cir. 1953). By his construction and the resultant fact finding, he reached a conclusion precisely contrary to the holdings of this court that self-help to continue service did not justify the mass discharge and that strikers were entitled to reinstatement unless replaced. The only matters for him to determine were when the strikers would have returned to work and who had been replaced as of that time, and to enter a direction that those not replaced be reinstated, and to adjudicate the differences, if any, over what reinstatement carried with it.

National urges that the decision of an appellate court in denying or granting a temporary injunction does not establish the law of the case, United States v. United States Smelting R. & M. Co., 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950), especially when "evidence on a subsequent trial was substantially different" from that presented at the original trial. White v. Murtha, 377 F.2d 428, 432 (5th Cir. 1967).

■ But "[t]he issues before the district court at the preliminary injunction stage may be such that its order, or if the order is reviewed, the appellate court's order is conclusive of the action." 7 Moore Federal Practice ¶ 65.21 at 1703 (2d ed. 1968); Youngstown Sheet and Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). Here the illegality of the mass discharge was presented on the motion for preliminary injunction and had been settled conclusively by the opinion of this court. The exception to law of the case where

"evidence on a subsequent trial [is] substantially different" is inapplicable where by the prior appeal the issue is not left open for decision. Paull v. Archer-Daniels-Midland Company, 313 F.2d 612 (8th Cir. 1963); Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L. Ed.2d 298 (1964).

We turn to the matter of relief. In the proceedings on remand the District Court held that in the absence of the discharge the strike would have ended on January 24 when the suspension expired. 308 F.Supp. at 181–182.

■ The strikers are not barred from reinstatement because they, arguably, failed to make an unconditional application for reinstatement. The decision for the District Court, as framed by this court on the prior appeal, was to establish the point in time at which the suspended employees in New York, whose suspension triggered the strike, would have returned to work. That was to be the point at which it was assumed the discharged employees also would have returned to work had they been free to return rather than terminated. The matter for decision was, as the District Judge specifically recognized, an abstract one—not whether the discharged men unconditionally offered to come back to work on January 24, or conditioned their offer, or whether National unconditionally offered reinstatement, or offered less than that, but what it could reasonably be inferred would have happened if the suspensions of the New York employees had been removed as a cause of disaffection. This is not the National Labor Relations Act situation of the economic striker who unconditionally offers to return to work to protect his right to pay, or the employer who offers reinstatement which if not accepted may terminate the right to pay. We are concerned with the right of wrongfully discharged employees to a judicially directed reinstatement under the terms of this court's orders. The District Judge's finding fixing January 24 as the

day on which the strike would have ended is supported by a mass of evidence.

■ However, we must remand the case for further findings because of uncertainties as to whether a small class of discharged employees had been replaced. The District Judge found that on January 24 National had on its premises four men who had been hired to replace strikers and that it hired 63 more on the 24th.[2] These findings raise two questions. What does "hired" mean, and when did National's right to "hire" replacements terminate?

The District Court considered that a replacement was hired and his predecessor's position filled when National had approved and extended an offer of employment to a new man and the applicant had accepted the offer. He noted that many of those in this category were applicants from outside the State of Florida who had to return home and prepare to move in order to begin work.

■ The word "hire" may be used in many different senses, representing a legal conclusion as well as a summary of a state of facts, International Ass'n of Machinists v. International Aircraft Services, Inc., 302 F.2d 808 (4th Cir. 1962), and the word "replaced," in the factual circumstances of the present case, is also ambiguous. In cases of replacement of a striker the critical time is when the arrangements with the replacement worker become fixed and irrevocable. *International Ass'n of Machinists, supra.* Thus, if an employer has the intention to bind itself to a firm contract of employment, and the employee has accepted a specific job assignment, the replacement is "hired" even though subsequently he may be divested of the job for failure to pass medical or security clearance. Lodge 743, International Ass'n of Machinists v. United Aircraft Corp., 299 F.Supp. 877, 893 (D.Conn. 1969).

■ Also, we do not know if the District Court considered whether those persons it concluded were replacements because they had entered into employment contracts ever actually reported for work. International Ass'n of Machinists v. International Air Service, *supra*, was remanded in order that the District Court could inquire into what enforceable obligations had been created between company and replacements and whether the replacements had ever acquired payroll status. The necessity of actually coming on the payroll is especially significant in the particular context of the present case where the undergirding rationale is preservation of the status quo as provided by the Railway Labor Act, a status the prior appeal sought to restore as of the time the strike would have ended. It would be inconsistent with that concept to hold that a discharged employee could not be restored to status quo because a contract had been made to replace him, if in fact the replacement never entered into the service of the company. In the run of the mill case of striker replacement the replacement is at work and the significance of a contract of employment is only to establish the time at which his employment commenced. In the present case, the formation of an employment contract with a replacement, which never ripens into actual employment, may not displace the statutory right of the discharged employee to return to the status quo.

■ The persons determined to be entitled to reinstatement must be reinstated with full benefits including back pay. United Indus. Workers v. Board of Trustees of Galveston Wharves, 400 F.

---

2. The union asserts that the 63 includes the four. This is a matter which can be clarified on remand.

   In the lower court counsel for the union stated that he would accept the figure of 67 as the number of people "hired through the 24th." In context, the reference was to a number and not of the legal concept of who had been "hired."

2d 320 (5th Cir. 1968), cert. denied, 395 U.S. 905, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); Cf. Mungin v. Florida East Coast Railway Company, 416 F.2d 1169, 1177 (5th Cir. 1969). The *Galveston* case describes both benefits and manner of calculation.

■ Apparently some discharged strikers were taken back before January 24, some of them pursuant to their specific requests, others as "new employees" without seniority. National urges that any such employee who has lost seniority, pay or other benefits, must grieve for his loss. National is in the peculiar position of urging that those who voluntarily came back to work are to be treated less well than those who did not. Resort to grievance procedures would only further fragment proceedings already difficult enough and would be inconsistent with the underpinning principle of restoration of the status quo. These employees are entitled to the same type of relief as those whose right to reinstatement is court-ordered.

■ Appellant claims that if a striker has been replaced and a vacancy he is qualified to fill has since arisen, he is entitled to be reinstated to that vacancy and to back pay and benefits from the time the vacancy arose. This issue was not determined on the prior appeal or by the District Court on remand and is for the District Court in the first instance.

Reversed and remanded for further proceedings not inconsistent with this opinion.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.