Grace VETTER, Appellant,

v.

Sue WAGNER d/b/a Polaris Lunch, and
Alaska Workmen's Compensation
Board, Appellees.

No. 3569.

Supreme Court of Alaska.

April 14, 1978.

Linda L. Walton, Rice, Hoppner & Hedland, Fairbanks, for appellant.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

OPINION

BOOCHEVER, Chief Justice.

For the second time, Grace Vetter has appealed from a superior court judgment affirming a decision of the Alaska Workmen's Compensation Board denying her compensation. Because the Board reconsidered an issue determined in the first appeal and decided that issue contrary to the provisions of our mandate, we reverse in part.[1]

On April 24, 1970, while acting in the scope of her employment as a waitress in Sue Wagner's restaurant, Vetter was injured when a customer physically attacked her. Wagner, who did not carry workmen's

---

1. We construe Vetter's statement of points on appeal to embody this reconsideration issue insofar as it is contended that the superior court's affirmance of the Board's decision was "contrary to law." The point is mentioned twice in Vetter's brief. Although it would have been preferable for Vetter to have treated the issue more fully, we have elected to consider it in view of its importance to the proper administration of judicial proceedings.

compensation insurance, paid some of Vetter's medical bills. Vetter filed a claim seeking payment of additional medical bills and temporary disability compensation. After a hearing in May 1972, the Board awarded Vetter $947.20 to cover additional medical bills incurred through the date of the hearing but dismissed the claim for disability compensation. The denial was affirmed by the superior court.[2]

On the prior appeal to this court, the dispute centered primarily on the Board's finding:

> That the applicant did not suffer disability from work as a result of injury on April 24, 1970. She was able to continue working for the remaining five to six hours of her shift and did not find need to see the doctor until the afternoon of a day when she was hurt at 2 a.m. The Board believes that applicant does not want to work and that her husband, who did not want her to work before the injury, probably keeps her from working now. We believe the fact that she gives a previous earning history of minimal employment during the three years previous to injury is indicative of this.[3]

We held that Vetter's claim could not be dismissed merely because she did not go to a doctor immediately. We discussed the Board's determination that Vetter was no longer employed, not because of any injury but because of her own personal desires, and held that there was considerable evidence in the record that Vetter was unable to return to work due to complications from her injury. Upon reviewing the entire record, a majority of this court concluded that there was not substantial evidence supporting the Board's finding that Vetter was

unwilling to find suitable employment either because her husband was opposed to her working or because she did not desire to work. The case was remanded to the superior court with instructions to, in turn, remand the case to the Board for further proceedings in conformity with our opinion.[4]

On remand, Vetter sought temporary total disability compensation from April 24, 1970, to continue until the termination of her temporary total disability. No claim was made for permanent disability.[5]

The Board, in the decision now under review, summarized the testimony of various witnesses and entered findings that:

> Undoubtedly the applicant sustained some injuries as a result of the altercation at the Polaris Lunch but we are unable to believe that they were as serious or lasting as the applicant indicates. Neither do we believe that applicant intended to return to the labor market as a waitress.

The Board concluded that she had voluntarily removed herself from the labor market for reasons unconnected with her injury, and the claim was denied and dismissed. The superior court affirmed.

█ It is readily apparent that, insofar as the Board based its decision for the period from the injury on April 24, 1970 to the date of its first decision, May 9, 1972, on a finding that Vetter had voluntarily removed herself from the labor market, it was reconsidering a matter expressly resolved by our opinion on the first appeal. An administrative body or inferior court has no power or authority to redetermine an issue contrary to the manner in which it has been ruled upon by an appellate court.

2. These facts are derived from our first decision in this case, *Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d 264, 265 (Alaska 1974).

3. *Id.*

4. *Id.* at 267–68.

5. Prior to our remand, the matter again came before the Board on April 3, 1973. Vetter

sought payment for additional medical expenses which had incurred between the dates of the award on May 9, 1972, and the April 3, 1973 hearing. The Board ordered her medical expenses in the amount of $350.15 to be paid, finding that they were related to the 1970 injury. There were additional medical bills which the Board found attributable to an automobile accident of January 4, 1973.

The United States Supreme Court stated in *Briggs v. Pennsylvania R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, 1405 (1948):

> In its earliest days this Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court. . . . The rule . . . has been uniformly followed . . . (citations omitted)

In *Paull v. Archer-Daniels-Midland Company*, 313 F.2d 612 (8th Cir. 1963), an appeal was originally taken to the United States Court of Appeals for the Eighth Circuit which held, in part, that Paull was not entitled to damages for lost profits because there was an inadequate factual basis for such a claim. Upon remand, the issue of entitlement to damages for lost profits was relitigated, and additional evidence was introduced supporting such a claim. The trial court, however, awarded only general damages. Appeal was taken on the contention that Paull was now entitled to damages for loss of profits. In affirming the trial court's decision denying the claim for lost profits, the court of appeals stated:

> When a case has been decided by this court on appeal and remanded to the District Court, every question which was before this court and disposed of by its decree is finally settled and determined. The District Court is bound by the decree and must carry it into execution according to the mandate. It cannot alter it, examine it except for purposes of execution, or give any further or other relief or review it for apparent error with respect to any question decided on appeal, and can only enter a judgment or decree in strict compliance with the opinion and mandate.

A mandate is completely controlling as to all matters within its compass but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal. . . . That court is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of this court deciding the case.[6]

Our decision in *State v. Salinas*, 362 P.2d 298, 301 (Alaska 1961), is to the same effect. We stated:

> It is our view that upon remand of a case by this court it becomes the duty of the lower court to obey the mandate and render judgment in conformity. This rule is supported by the overwhelming weight of authority and is based on the policy that litigation must be finally ended. (footnotes omitted)[7]

On occasion, we have approved a remand to the Board for the purpose of taking further evidence on an issue.[8] Here, however, we expressly ruled that there was insufficient evidence to support the Board's May 9, 1972 finding that Vetter had voluntarily removed herself from the labor market.[9] We did not remand for further evidence on that issue,[10] and the Board had no authority to reconsider it.

Since it was clear that Vetter had sustained an injury arising out of and in the course of her employment, it was the Board's duty to determine the amount of her average daily wage and the period of her temporary total or partial disability. The case must again be remanded for that purpose.[11]

■ What we have said disposes of the appeal as to the period from the date of

---

6. *Paull v. Archer-Daniels-Midland Company*, 313 F.2d at 617, *quoting, Thornton v. Carter*, 109 F.2d 316, 319–20 (8th Cir. 1940).

7. *See also, Cleary v. State*, 564 P.2d 374, 377 (Alaska 1977).

8. *See Employers Commercial Union Ins. Group v. Schoen*, 519 P.2d 819, 825–26 (Alaska 1974). *See also*, AS 44.62.570(d).

9. *Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d at 267–68.

10. *Id.*

11. We express no opinion as to the period of such disability.

injury to May 9, 1972, the date of the Board's first decision. Our prior opinion in this case, however, did not apply to the period subsequent to May 9, 1972. We believe that there was sufficient evidence presented regarding Mrs. Vetter's voluntary removal from the labor market subsequent to that date to substantiate the Board's finding. Our review is limited to a determination of whether the Board's findings are supported by substantial evidence in light of the record as a whole.[12]

To support the Board's finding that Vetter voluntarily removed herself from the labor market subsequent to May 9, 1972, we note the following evidence: Vetter's lack of regular employment between 1964 and her employment with Ms. Wagner;[13] her two extended visits to Australia subsequent to her injury;[14] the testimony of Dr. Young Ha who, upon examining Vetter in 1974, could find no physical factors to sustain her complaints and, of prime significance, the fact that she apparently has made no effort to seek any type of employment since the May 1972 hearing, although Dr. Ha and Dr. Joseph Ribar, Vetter's treating physician, indicated that Vetter could perform light work.

We conclude that the Board erred in reconsidering an issue previously determined by this court, but we affirm the portion of its decision pertaining to the period subsequent to that previously considered on the first appeal to this court.

The case is again remanded to the superior court with instructions to remand to the Alaska Workmen's Compensation Board for the purpose of determining the amount of compensation due Mrs. Vetter for temporary total or partial disability attributable to her injury for the period from April 24, 1970 until May 9, 1972.

REVERSED IN PART, AFFIRMED IN PART AND REMANDED.[15]

12. *Hawkins v. Green Associated*, 559 P.2d 118, 120 (Alaska 1977); *Beauchamp v. Employers Liability Assurance Corp.*, 477 P.2d 993, 997 (Alaska 1970).

13. We do not believe that her sporadic employment history is sufficient in itself to establish voluntary removal. *See Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d at 266–68.

14. Vetter testified that her mother, who lived in Australia, was seriously ill. The two visits lasted three months and four or five weeks, respectively.

15. Vetter also contends that she was entitled to a permanent disability award. In view of her failure to present such a claim and the conflicting testimony pertaining to the duration and extent of her disability, the Board did not err in failing to find *sua sponte* that she was permanently disabled as a result of her injury.