# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

———

No. 99-6048WM

———

| | | |
|---|---|---|
| In re: | * | |
| MARY BETH USERY | * | |
| | * | |
| Debtor. | * | |
| --------------------- | | |
| EWING B. GOURLEY and | * | Appeal from the United |
| CAROL L. GOURLEY | * | States Bankruptcy Court for |
| | * | the Western District of Missouri |
| Plaintiffs-Appellants | * | |
| | * | |
| v. | * | |
| | * | |
| MARY BETH USERY; | * | |
| STEVEN USERY; and | * | |
| MARK GARDNER | * | |
| | * | |
| Defendants-Appellees. | * | |
| --------------------- | | |
| MARY BETH USERY; STEVEN | * | |
| USERY; MARK GARDNER, | * | |
| Trustee of the Shawn Usery Trust and | * | |
| the Stephanie Usery Trust; and | * | |
| WILLIAM HART, Trustee Under | * | |
| Certain Deeds of Trust | * | |
| | * | |
| Plaintiffs - Appellees | * | |
| | * | |
| v. | * | |
| | * | |
| EWING B. GOURLEY; CAROL L. | * | |
| GOURLEY; E.B.G. HEALTH | * | |
| CARE III, INC.; E.B.G. HEALTH | * | |
| CARE IV, INC.; HEALTH | * | |
| CARE RETIREMENT VILLAGE, | * | |
| INC.;  and HEALTH CARE | * | |
| LAUNDRY SERVICES, INC. | * | |
| | * | |
| Defendants-Appellants. | * | |

Submitted: November 10, 1999
Filed: December 16, 1999

Before WILLIAM A. HILL, SCOTT, and DREHER, Bankruptcy Judges.

DREHER, Bankruptcy Judge

Ewing and Carol Gourley ("Appellants") appeal from the order of the bankruptcy court[1] calculating damages in their fraud case after remand from the Eighth Circuit Court of Appeals for a new trial limited solely to that issue. The facts of this case are set forth in the Eighth Circuit's opinion in Gourley v. Usery (In re Usery), 123 F.3d 1089 (8th Cir. 1997), and will be expanded below only to the extent necessary for the issues presently on appeal.

I.      BACKGROUND

On May 1, 1989, Appellants purchased two nursing homes known as Northside Nursing Center ("Northside") and Ozark Nursing and Care Center ("Ozark") from Central Health Care Centers, Inc., which was owned by Appellees Mary Beth Usery, her then-husband Steve Usery, and a trust for the benefit of their children ("Appellees"). The terms of the transaction provided that the Appellants would pay a total of $8 million for the business. The Appellants agreed to assume debts of the business totaling $4,158,986.74 and signed a promissory note in favor of the Appellees for the remaining portion of the purchase price ($3,841,013.26). The Appellants agreed to the purchase on the representation that the cash flow for the 15 month period that included 1987, after service of existing debt, was approximately $1.2 million, or $960,000 annually. The Appellees further represented that, although complete financial records were not yet available, cash flow in 1988 was substantially the same as 1987. Appellants determined, based on these representations, that

---

[1]The Honorable Arthur B. Federman, United States Bankruptcy Judge, Western District of Missouri.

the cash flow would be sufficient to pay the current expenses, the assumed liabilities, and the promissory note, while still allowing them to earn a profit. Appellants were aware that, due to certain management problems, Northside was operating under a consent agreement with the state during part of 1988.

Due to cash flow problems with the business, the Appellants stopped making full payments on the promissory note and eventually began missing payments altogether. Because Mary Beth Usery depended on the income from the promissory note, she filed a Chapter 11 bankruptcy case on February 17, 1992. The Appellants, claiming that the Appellees had defrauded them in the sale of the business, filed an adversary proceeding to cancel the promissory note and determine the dischargeability of damages arising out of the fraud. The Appellees also filed an adversary proceeding seeking a judgment against the Appellants in the amount of the promissory note. The two adversary proceedings eventually were joined and tried before the Hon. Karen M. See.

At the end of the trial Judge See orally found that the Appellees had committed fraud in connection with the sale of the business. She found, in relevant part, that the Appellees had misrepresented the business's cash flow in 1988 as being substantially the same as the cash flow in 1987 when, in fact, it was significantly lower. She tentatively found that the damages at least equaled the amount of the promissory note. She later ordered entry of judgment for the Appellants. In her written opinion, she found that damages actually totaled $5,470,775.57. Benefit of the bargain damages, which Judge See defined as the difference between the actual value of the business and the price paid, totaled $2,697,000.26.[2] In reaching this sum, she specifically adopted the valuation of the business by Appellants' expert, who concluded that the actual value was $5,175,000.00, based on the average cash flow for 1985, 1986, and 1988 divided by a capitalization rate of 16.9% for Ozark and 18.7% for Northside. She also agreed with the Appellants' expert that the cash flow for 1987 should not be included in the calculation because that year was atypical. After the damages were set off against the promissory note, judgment was entered in favor of the Appellants in the amount of $1,629,762.31.

_____

[2] The remaining portion of the damages was overturned by the Eighth Circuit and are not at issue in this appeal.

3

Appellees appealed the decision to the United States District Court for the Western District of Missouri, which affirmed. Appellees then appealed to the Eighth Circuit Court of Appeals. The Eighth Circuit affirmed as to the liability of the Appellees, but found several errors with respect to the damages. Most importantly for the present appeal, the Court found that the bankruptcy court used an improper formula for calculating benefit of the bargain damages. Instead of the difference between the *price paid* and the actual value, the Eighth Circuit concluded that the proper measure of damages was the difference between the *value of the business had it been as represented* and the actual value. The Court remanded the case for a new trial on the issue of damages. The instructions specifically provided:

> On remand, the Bankruptcy Court must determine the difference between the actual value of the nursing homes and the value of the homes *as represented*, using the same capitalization rate for each part of the equation. In other words, the court must use the same process to calculate both valuation figures, changing only the cash-flow numbers. Because valuation is a subjective art, we are unable to make a specific finding as to damages on appeal, but we note that each of the illustrative calculations we have undertaken, including the example presented in [Appellees'] reply brief, has yielded benefit-of-the-bargain damages of less than $600,000.

Gourley v. Usery, 123 F.3d 1089, 1095 (8th Cir. 1997). In its conclusion the Court further stated:

> Because of several errors in the calculation of damages, a new trial limited to the issue of damages is required. The judgment of the District Court is affirmed as to liability and reversed as to damages, and the case is remanded with instructions to remand to the Bankruptcy Court for further proceedings in accordance with the opinion.

Id. at 1097.

On remand, Judge See entered an order recalculating the damages without conducting a new trial. In this order, Judge See concluded that the value of the business as represented was $8.2 million, and the actual value was $5,919,983.00. Thus, she found benefit of the bargain damages totaled $2,280,017.00. After adding other damages that are not at issue on appeal, Judge See set off the sum against the promissory note. Because the outstanding

4

amount of the promissory note exceeded the total damages, Judge See ordered entry of judgment in favor of the Appellees in the amount of $462,746.13.

After Judge See left the bench, the case was transferred to Hon. Arthur B. Federman, and the Appellees moved for a new trial on the issue of damages. Judge Federman granted the motion because no retrial had been held, which he found violated the Eighth Circuit's instructions on remand.[3] In the order granting the motion for a new trial, the court stated:

> [B]ased on the holding of the Eighth Circuit, the matters to be decided at the new trial have been carefully circumscribed. In the interest of fairness and judicial economy, this Court does not intend to admit evidence as to the factual findings previously made by Judge See and not disturbed on appeal.

The second trial was held on May 6, 1999. Each side called an expert witness to testify as to both the actual and represented value of the business. The Appellants' expert calculated the two values based solely on the actual and represented cash flow for 1988 and a capitalization rate of fourteen percent. After making adjustments to the actual value for what he described as suppressed nursing costs and laundry expenses, the expert concluded that the damages would total $7,363,765.00. The bankruptcy court rejected this expert's opinion as defying common sense because it rendered the business nearly valueless even though it continued to operate and had successfully refinanced its mortgage. The court observed that such a value would mean that the Appellees, as the sellers, should have paid the Appellants to purchase the business from them and assume the debt. It further found no justification for the adjustments made by the expert. Finally, the court also noted that the expert was not independent (he had previously done and continued to do other work for the Appellants) and was not an MAI appraiser.

Appellees called an MAI appraiser who specialized in appraising nursing homes. He figured the actual and represented value based on the average cash flow of the two nursing homes for 1985 through 1988. He weighted the figures to account for external circumstances for each year and determined the value based upon a capitalization rate of fifteen percent. This expert concluded that the Appellants suffered benefit of the bargain damages in the

---

[3]The Appellants do not argue that the granting of a new trial was in any way improper or incorrect.

amount of $390,854.87. The following chart summarizes his opinion, which the bankruptcy court adopted as its calculation of damages.

ACTUAL CASH FLOW

| YEAR | OZARK | WEIGHT | TOTAL | NORTHSIDE | WEIGHT | TOTAL |
|------|-------|--------|-------|-----------|--------|-------|
| 1985 | $346,927 | 1 | $346,927 | $470,089 | 2 | $940,178 |
| 1986 | $568,611 | 2 | $1,137,222 | $526,686 | 2 | $1,053,372 |
| 1987 | $612,593 | 2 | $1,225,186 | $623,543 | 2 | $1,247,086 |
| 1988 | $506,295 | 1 | $506,295 | $337,166 | 1 | $337,166 |
| TOTAL | | 6 | $3,215,630 | | 7 | $3,577,802 |

Actual weighted average cash flow for Ozark: $3,215,630 ÷ 6 = $535,938.33
Actual weighted average cash flow for Northside: $3,577,802 ÷ 7 = $511,114.57
Actual weighted average cash flow for both: $535,938.33 + $511,114.57 = $1,047,052.01

Actual Value: $1,047,052.01 ÷ 15% capitalization rate = $6,980,346.73

REPRESENTED CASH FLOW

| YEAR | OZARK | WEIGHT | TOTAL | NORTHSIDE | WEIGHT | TOTAL |
|------|-------|--------|-------|-----------|--------|-------|
| 1985 | $346,927 | 1 | $346,927 | $470,089 | 2 | $940,178 |
| 1986 | $568,611 | 2 | $1,137,222 | $526,686 | 2 | $1,053,372 |
| 1987 | $612,593 | 2 | $1,225,186 | $623,543 | 2 | $1,247,086 |
| 1988 | $612,593 | 1 | $612,593 | $623,543 | 1 | $623,543 |
| TOTAL | | 6 | $3,321,928 | | 7 | $3,864,179 |

Represented weighted average cash flow for Ozark: $3,321,928 ÷ 6 = $553,654.67
Represented weighted average cash flow for Northside: $3,864,179 ÷ 7 = $552,025.57
Represented weighted average cash flow for both: $553,654.67 + $552,025.57 = $1,105,680.24

Represented value: $1,105,680.24 ÷ 15% capitalization rate = $7,371,201.60

**Benefit of the Bargain Damages: $7,371,201.60 - $6,980,346.73 = $390,854.87**

6

In adopting these figures, the bankruptcy court specifically noted the credibility of the Appellees' expert witness both in his testimony and his methodology. In particular, the court agreed that valuation of the business required using more than just one year's cash flow, contrary to the Appellants' expert's methodology. It further agreed that lesser weight should be accorded to (1) Ozark's cash flow for 1985 because it was newly in business that year; and (2) the entire cash flow for 1988 because of the existence of the consent agreement with the state. Accordingly, the presence of these circumstances made these particular numbers less indicative of the actual value of the business as a going concern.[4]

The bankruptcy court added the $390,854.87 in benefit of the bargain damages to other damages totaling $302,249.15 that the parties do not dispute. Thus, the damages totaled $693,104.02. The court determined that this amount should be offset against the outstanding amount of the promissory note, which resulted in a judgment in favor of the Appellees. The bankruptcy court further found that the Appellees were entitled to interest on the judgment pursuant to the original terms of the promissory note, less the amount of the damages and any payments previously made.[5] The court did not specifically calculate the final amount of the judgment.

The Appellants appeal to the Bankruptcy Appellate Panel asserting eight separate errors in the calculation of damages.[6]

---

[4]Judge Federman did not address Judge See's conclusion that the results of 1987 were also atypical.

[5]Appellants do not challenge the award of interest on appeal.

[6] The Appellants list the following arguments: (1) that the court erred in allowing evidence and altering findings that were not disturbed on appeal with respect to represented and actual cash flow in 1987 and 1988; (2) that the court erred by assigning more weight to cash flow for 1987 despite evidence that the operations for that year were not typical; (3) that the court erred in using an historical approach with respect to represented cash flow because only cash flow for 1987 and 1988 was represented to them; (4) that the court erred in assigning less weight to the cash flow of Ozark for 1988 when the consent order only affected Northside; (5) that the court erred in assigning less

II.     STANDARD OF REVIEW

Although the Appellants raise eight separate arguments on appeal, their arguments actually raise only two basic issues, each of which requires a different standard of review. The issue of whether the bankruptcy court exceeded the mandate of the Eighth Circuit on remand is a question of law subject to de novo review. S & P, Inc. v. Pfeifer, 189 B.R 173, 179 (N.D. Ind. 1995).

The bankruptcy court's decision regarding the amount of damages is a factual finding and will not be disturbed unless the finding is clearly erroneous. Arkansas Rice Growers Coop. v. Alchemy Indus., 797 F.2d 565, 571 (8th Cir. 1986); Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.), 186 F.3d 1356, 1369 (Fed. Cir. 1999); Lentil v. Ulrich, (In re Lentil), 236 B.R. 720, 723 (B.A.P. 9th Cir. 1999); TranSouth Financial Corp v. Sharon (In re Sharon), 234 B.R. 676, 679-80 (B.A.P. 6th Cir. 1999); Shimer v. Fugazy (In re Fugazy Express, Inc.), 124 B.R. 426, 430 (S.D.N.Y. 1991). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 (B.A.P. 8th Cir. 1997) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). A choice between two permissible views of the evidence cannot be clearly erroneous. Davis v. Delo, 115 F.3d 1388, 1393-94 (8th Cir. 1997).

To the extent that Appellants seek review of the methodology chosen to compute damages, the abuse of discretion standard applies. Cambridge Biotech, 186 F.3d at 1369. An abuse of discretion may only be found if the lower court's judgment was based upon clearly erroneous factual findings or erroneous legal conclusions. Hopper v. Hopper (In re Hopper), 228 B.R. 216, 217 (B.A.P. 8th Cir. 1999). The abuse of discretion standard is

weight to the cash flow of Northside for 1988 when the consent order was only in place for part of the year; (6) that the court erred in assigning less weight to the cash flow for 1988 because, as the year immediately preceding the sale, it should have been given more importance; (7) that the court erred in using a weighting system at all; and (8) that the court erred in assigning less weight to the cash flow of Ozark for 1985 due to start up costs because the home was actually licensed in 1982 and fully operational in 1984.

indistinguishable from the clearly erroneous standard in its application. Forbes, 215 B.R. at 187 n.6.

III.    DISCUSSION
        A.    The Eighth Circuit's Mandate And The Law of The Case
        The Appellants first argue that the bankruptcy court exceeded its authority on remand by (1) looking to cash flow figures for years other than 1988 when only 1988 figures were represented to them; (2) taking new evidence on the cash flow figures for 1988 rather than using the figures adopted by Judge See; and (3) including the cash flow for 1987 in the valuation calculation when Judge See had found that year to be atypical. Appellants' contentions, in this respect, require an examination of the law of the case doctrine and its corollary, the mandate rule.

        The law of the case doctrine prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties, and promote judicial economy. Klein v. Arkoma Prod. Co., 73 F.3d 779, 784 (8th Cir. 1996); see also Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991). When a case has been decided by the Eighth Circuit on appeal and remanded, every question decided by the appellate court, whether *expressly or by necessary implication*, is finally settled and determined, thus creating a mandate for the lower court. Klein, 73 F.3d at 784; Paull v. Archer-Daniels-Midland Co., 313 F.2d 612, 617 (8th Cir. 1963) (citing Thornton v. Carter, 109 F.2d 316, 319-20 (8th Cir. 1940)); see also Lamb Engineering & Constr. Co. v. Nebraska Public Power Dist., 145 F.3d 996, 998 (8th Cir. 1998) ("Under the law of the case doctrine, the [lower] court was bound on remand to obey the Eighth Circuit's mandate and not to re-examine issues already settled by our prior panel opinion."); S&P, Inc. v. Pfeifer, 189 B.R. 173, 179-80 (N.D. Ind. 1995). The mandate of the appellate court is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue that was not expressly or impliedly disposed of on appeal. Paull, 313 F.2d at 617 (citing Thornton, 109 F.2d at 319-20); see also Quern v. Jordan, 440 U.S. 332, 348 n.18 (1979); Exxon, 931 F.2d at 877; S&P, 189 B.R. at

9

180. Moreover, the lower court is not bound by its own earlier rulings unless explicitly or implicitly adopted by the appellate court.[7] Exxon, 931 F.2d at 877; S&P, 189 B.R. at 180.

The application of the mandate rule and the law of the case doctrine depends substantially upon the language of the appellate court's opinion. Bailey v. Henslee, 309 F.2d 840, 843 (8th Cir. 1992); S&P, 189 B.R. at 180. Appellants recognize that the Eighth Circuit's opinion, as it related to the damages award, contained three requirements: (1) the bankruptcy court was to measure damages not by the difference between purchase price and actual value, but by the difference between the value as represented and actual value; (2) the bankruptcy court was to use the same capitalization rate to calculate both actual and represented value; and (3) the bankruptcy court was to use the same process for calculating both actual and represented value, changing only the cash flow numbers.

The bulk of Appellants' argument centers on the first of these instructions. They reason that, because the Appellees only represented 1988 cash flow to them, the value "as represented" can only be based on 1988 cash flow. Therefore, they argue that the bankruptcy court violated the mandate of the Eighth Circuit by using cash flow from other years to determine the value "as represented." While it may be true that the Appellees only represented 1988 cash flow to the Appellants, such representation did not amount to the entire represented value of the business. Under well-accepted valuation techniques, a proper valuation of an on-going business requires consideration of more than one year's cash flow. The instruction to determine the value of the business "as represented" meant using normal, well-accepted valuation techniques inserting any misrepresented figures in place of the actual figures in the calculation. The represented value of the business, thus, was affected by the fraudulent representation of cash flow for 1988, but it did not limit the scope of valuation to just that year. The bankruptcy court did not err in considering the cash flow for other years in valuing the business "as represented."

---

[7] The fact that the case was transferred to a different judge prior to the second trial does not affect Judge Federman's ability to reconsider issues not finally determined by the prior appeal. Exxon, 931 F.2d at 878 ("To the extent that a trial judge can alter a previous ruling, so too can a successor judge.").

10

The bankruptcy court also followed the remaining instructions of the Eighth Circuit's mandate. It used the same capitalization rate and the same process for calculating both actual and represented value, substituting only the misrepresented cash flow figures. It then determined the amount of the damages by subtracting the actual value of the business from the value as represented.

Appellants further contend that the bankruptcy court violated the law of the case doctrine because any findings that were left undisturbed by the Eighth Circuit remained binding on the bankruptcy court on remand. In particular they assert that on remand the bankruptcy court should not have taken new evidence related to the actual and represented cash flow for 1988 and should not have included the cash flow figures for 1987 in its calculations because Judge See's findings on these matters were not disturbed on appeal. Appellants' argument is not a proper application of the law of the case doctrine. See Exxon, 931 F.2d at 877 ("[The appellant] contends that when the dispositive finding of [the judge] . . . was not disturbed on appeal, it became the law of the case and thus not subject to further revision. This argument misapprehends the scope and meaning of the law of the case doctrine."). Unless the opinion either *expressly or by necessary implication* adopted the bankruptcy court's findings on actual and represented cash flow for 1988 or the exclusion of 1987 cash flow from the calculation, the bankruptcy court was free to reexamine those issues. Exxon, 931 F.2d at 877; S&P, 189 B.R. at 180.

In the portion of the Eighth Circuit's opinion affirming as to liability, the Court nowhere expressly adopted the actual or represented cash flow figures for 1988. Similarly, it did not expressly adopt the decision to exclude 1987 cash flow from the calculation. Thus, the court must have adopted the findings by necessary implication in order for the bankruptcy court to be bound by them. Exxon, 931 F.2d at 877; S&P, 189 B.R. at 180. Although the Court mentions the bankruptcy court's 1988 figures, such findings were not relied upon or necessary to the decision. Only the fact that the 1988 cash flow was far less than cash flow in 1987 was necessarily implied by the decision to affirm. Likewise, the decision to exclude 1987 cash flow from the valuation had no bearing on the Court's decision with respect to the damages. Consequently, the bankruptcy court was free to reexamine these findings. See Exxon, 931 F.2d at 878 ("We hold that when a judgment has come before us for review, and certain findings of fact were not examined in, relied on, or

11

otherwise necessary to our decision in that appeal, law of the case does not prevent the trial court on remand from reexamining those findings . . . .").

Accordingly, the bankruptcy court did not violate the mandate of the Eighth Circuit or the law of the case doctrine on remand.[8]

B.      Calculation of Damages

The Appellants cite numerous points of error with respect to the bankruptcy court's method of determining the actual and represented values of the business. They balk at the weight given to the 1987 cash flow, the 1988 cash flow, and Ozark's 1985 cash flow, and the use of a weighting system at all. Appellants do not suggest that the Appellees' method of calculation is an impermissible way to value a business. They merely assert that the method was incorrect under these circumstances.

---

[8]Moreover, the Appellants' never raised an objection during the trial that the evidence exceeded the mandate either with respect to determining the value "as represented" or taking new evidence on "undisturbed" findings. The only objection was a continuing objection that some of the arguments being advanced by the Appellees attempted to retry the issue of liability. Because the Appellants did not object at trial to the admission of the evidence, the matter can only be reviewed for plain error, McKeel v. City of Pine Bluff, 73 F.3d 207, 211 (8th Cir. 1996), which requires that failure to correct the matter will result in a miscarriage of justice. Cross v. Cleaver, 142 F.3d 1059, 1067 (8th Cir. 1998). We are satisfied that no such error occurred.

Appellants also did not object that the scope of the evidence went beyond the court's order for a new trial. Both sides came prepared for a trial on the issue of damages. Indeed, the Appellants themselves offered new evidence as to the "undisturbed" figures by making adjustments to actual value for suppressed nursing costs and laundry expenses. Appellants cannot now claim that they were somehow misled by Judge Federman's order. Although the order stated that the court would not admit evidence as to factual findings not disturbed on appeal, such order clearly related to the findings, affirmed by the Eighth Circuit, that the Appellees were liable for fraud. To the extent that the issues presented at trial exceeded the scope of the order, the parties are deemed to have consented. See Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997) (citing Nielson v. Armstrong Rubber Co., 570 F.2d 272, 275 (8th Cir. 1978)); see also United States v. National Homes Construction Corp, 581 F.2d 157, 162 (8th Cir. 1978) (failure to object to evidence contrary to pretrial order foreclosed objection on appeal).

The bankruptcy court had before it two experts to testify as to the value of the business. It found the Appellees' expert to be more credible both in his testimony and his methodology than Appellants' expert and found that the opinion of Appellants' expert defied common sense. Thus, the court reasonably chose to adopt the findings of one expert rather than the other. It cannot be clear error to choose between two permissible views of the evidence. Davis v. Delo, 115 F.3d 1388, 1393-94 (8th Cir. 1997). Thus, the bankruptcy court's findings as to the actual and represented values of the business and the resulting amount of damages will be affirmed.

## CONCLUSION

Based on the foregoing, we affirm the decision of the bankruptcy court in its entirety.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT