# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-1015 & 03-2616

_____

Pediatric Specialty Care, Inc.; Child                    *
& Youth Pediatric Day Clinics, Inc.;                     *
Family Counseling & Diagnostic                           *
Clinic, Inc.; Tomorrow's Child                           *
Learning Center, LLC; D&D Family                         *
Enterprises, Inc.; James Swindle;                        *
Stacey Swindle, as parents and next                      *
best friends of Jacob and Noah                           *
Swindle, Minors; Susann Crespino,                        *
as parent and next friend of Michael                     *
Crespino, a minor,                                       *
                                                         *
            Appellees,                                   *
                                                         *   Appeals from the United States
      v.                                                 *   District Court for the
                                                         *   Eastern District of Arkansas.
Arkansas Department of Human                              *
Services; Kurt Knickrehm, in his                         *
individual capacity and in his official                  *
capacity as Director of the Arkansas                     *
Department of Human Services; Ray                        *
Hanley, in his individual capacity and                   *
in his official capacity as director of                  *
the Division of Medical Services of                      *
the Arkansas Department of Human                         *
Services,                                                *
                                                         *
            Appellants,                                  *

_____

No. 03-1483

_____

Pediatric Specialty Care, Inc.; Child          *
& Youth Pediatric Day Clinics, Inc.;           *
Family Counseling & Diagnostic                 *
Clinic, Inc.; Tomorrow's Child                 *
Learning Center, LLC; D&D Family               *
Enterprises, Inc.; James Swindle;              *
Stacey Swindle, as parents and next            *
best friends of Jacob and Noah                 *
Swindle, Minors; Susann Crespino,              *
as parent and next friend of Michael           *
Crespino, a minor,                             *
                                               *
              Appellees,                       *
                                               *
        v.                                      *
                                               *
Arkansas Department of Human                    *
Services; Kurt Knickrehm, in his                *
individual capacity and in his official         *
capacity as Director of the Arkansas            *
Department of Human Services; Ray               *
Hanley, in his individual capacity and          *
in his official capacity as director of         *
the Division of Medical Services of             *
the Arkansas Department of Human                *
Services,                                       *
                                               *
              Defendants,                        *
                                               *
Centers for Medicare and Medicaid               *
Services, a component of the United             *

States Department of Health and            *
Human Services,                            *
                                           *
                        Appellant.         *

_____

Submitted: January 15, 2004

Filed:  April 16, 2004
_____

Before BYE, HEANEY, and SMITH,  Circuit Judges.
_____

HEANEY, Circuit Judge.

This case concerns proposed revisions to Arkansas's state Medicaid plan that would affect programs for special needs children.  Arkansas has provided services to special needs children under its Child Health Management Services (CHMS) program, a comprehensive program that provides evaluation and therapy in a multi-disciplinary clinical setting.  In November of 2001, the Arkansas Department of Human Services (ADHS) announced that it would significantly alter the program, removing its therapeutic and early intervention day treatment services.  The district court[1] previously enjoined Arkansas from making such changes, and we affirmed in part, reversed in part, and remanded for further proceedings.  See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472 (8th Cir. 2002).  On remand, the district court found that the proposed changes would result in a denial of procedural and substantive due process, and ordered the services to continue without any changes.  ADHS now appeals the district court's adverse rulings on these claims.

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

We affirm the district court's ruling that ADHS may not alter the CHMS program until it conducts an impact study to ensure that the changes are consistent with the principles of economy, efficiency, quality of care, and access to care. On the basis of the record before us, however, we reverse the district court's ruling as to the substantive due process claim.

The federal Centers for Medicare & Medicaid Services (CMS) was not a party to the suit below. Nonetheless, the district court ordered it to continue to subsidize the services that ADHS was providing. CMS appeals, and we reverse.

## BACKGROUND

Much of the historical background to this case was detailed in our prior decision. See Pediatric Specialty Care, Inc., 293 F.3d at 475-77. As part of its state Medicaid plan,[2] Arkansas has provided medical services to special needs children under the CHMS program. The program extends diagnostic and evaluative services, pediatric day treatment, and various therapies to children from six months to six years of age. In November of 2001, ADHS issued a press release announcing its intention to restructure the CHMS program, terminating day treatment and therapeutic services from the plan.

In response to this decision, Pediatric Specialty Care, Inc., a provider of CHMS services, along with other CHMS providers and parents of recipients of CHMS services (collectively the Plaintiffs), brought suit seeking to bar ADHS from changing

---

[2]Medicaid has been defined as "a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990). While participation in Medicaid is voluntary, states that choose to participate must comply with the requirements for state plans as outlined in 42 U.S.C. § 1396a. Ark. Med. Soc'y v. Reynolds, 6 F.3d 519, 522 (8th Cir. 1993).

the CHMS program. The district court found that the Medicaid Act[3] entitled children to an enforceable right to early intervention day treatment services, and that such services were currently provided under the CHMS program. It further found, that although such services would still be available if recommended by a physician, cutting the CHMS program would inhibit the ability of children to readily receive the treatment they needed. Accordingly, the district court enjoined ADHS from changing the program and ordered it to continue to include CHMS early intervention day treatment services in its state Medicaid plan.

On appeal, our court agreed that children are entitled to day treatment under the Medicaid Act. Pediatric Specialty Care, Inc, 293 F.3d at 480. We reversed, however, the district court's holding "to the extent that it requires CHMS early intervention day treatment services be specifically included in the State Plan." Id. We reasoned that although the Medicaid Act required early and periodic screening, diagnosis, and treatment (EPSDT) services to be provided as part of the participating state's plan, id. at 479, those services need not be specifically or expressly listed, id. at 480. Rather, it was sufficient that ADHS continue to provide CHMS-like services when prescribed by a physician, without keeping the actual CHMS program. Id. at 480-81. We remanded the case for modification of the injunction and consideration of the Plaintiffs' procedural due process claim. Id. at 481.

On remand, the district court held further proceedings to consider the Plaintiffs' procedural *and* substantive due process claims. By order dated November 27, 2002, the district court found that by seeking to terminate elements of the CHMS program, ADHS made a decision affecting payment of services. According to the district court, this invoked 42 U.S.C. § 1396a(a)(30)(A), which mandates that changes in methods and procedures of payment must be consistent with the principles of economy, efficiency, quality of care, and equal access. Since ADHS had done nothing to

---

[3]42 U.S.C §§ 1396-1396v.

determine the effect that terminating elements of the CHMS program would have on these principles, the district court enjoined ADHS from terminating the program until it completed an impact study. The district court further found that for a number of years, Arkansas had been trying to curtail its early intervention day treatment services program. The court noted that the decision seemed to be based on improper motivations, and would result in a loss of medical services for needy children. Finding that such conduct shocked the conscience, the court enjoined ADHS from restructuring the CHMS program or moving CHMS-like services "off-plan."[4] On December 18, 2002, the district court extended its injunction to CMS, specifically requiring CMS to continue to provide federal funding for the CHMS program.

ADHS appeals, arguing that they should not be required to complete any study before changing the CHMS program. With regard to the substantive due process matter, ADHS notes that this issue was not remanded to the district court, and suggests that our prior opinion permitting ADHS to terminate elements of the CHMS program precluded the district court from ordering the plan to continue. It further argues that its decision to restructure the CHMS program is supported by a rational basis and thus no substantive due process violation would arise from the change. CMS appeals the extension of any injunction to it because it was never a party to the underlying action and did not act in concert with ADHS.

## ANALYSIS

We review the grant of injunctive relief for an abuse of discretion. Randolph v. Rodgers, 170 F.3d 850, 856 (8th Cir. 1999). We must necessarily consider the

---

[4]"Off-plan" and "off-planning" are terms used by the parties to refer to termination of the CHMS program from the state Medicaid plan, recognizing that the state would still be obligated to pay for CHMS-like services even though the services are not specifically listed in the state plan. (See, e.g., Tr. of Sept. 12, 2002, Evidentiary Hr'g at 84-85.)

predicate facts and law to determine if the district court abused its discretion by ordering relief at all. See, e.g., FDIC v. Bell, 106 F.3d 258, 262-63 (8th Cir. 1997). A district court abuses its discretion if it issues an injunction based on an incorrect understanding of the law or reliance on clearly erroneous factual determinations. Randolph, 170 F.3d at 856.

## I.    PROCEDURAL DUE PROCESS

On remand, the district court held that ADHS violated the tenets of 42 U.S.C. § 1396a(a)(30)(A), often referred to as the "equal access provision" of the Medicaid Act, see Ark. Med. Soc'y Inc. v. Reynolds, 6 F.3d 519, 522 (8th Cir. 1993), by attempting to alter the CHMS program without first considering how efficiency, economy, quality of care, and access to care would be affected. It enjoined ADHS from changing the program until an impact study considering these principles was completed.

At the outset, we dispose of ADHS's argument that the equal access provision of the Medicaid Act cannot support the Plaintiffs' procedural due process claim because it does not create any constitutionally-recognized property interest. It is well established that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits." Board of Regents v. Roth, 408 U.S. 564, 576 (1972). "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577; accord Goldberg v. Kelly, 397 U.S. 254, 261-62 (1970) (recognizing that federal and state regulatory frameworks had created a constitutional property interest in continued receipt of welfare benefits). Over ten years ago, our court held that § 1396a(a)(30)(A) created enforceable rights for Medicaid recipients and providers.

-7-

Ark. Med. Soc'y, 6 F.3d at 528. We find it entirely appropriate for the Plaintiffs to base their procedural due process claim on their clearly established right to have equal access to quality medical care as defined by § 1396a(a)(30)(A).

Section 1396a(a)(30)(A) requires that state Medicaid plans employ "methods and procedures relating to the utilization of, and the payment for, care and services" as necessary to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." ADHS suggests that this statute does not apply since the rate it will pay each provider will remain the same. While the particular rate of payment for each provider may remain the same, § 1396a(a)(30)(A) concerns not only the rate, but also the method and process of payment for services.[5] The district court found that termination of parts of the CHMS program would result in a change in the level and method of payment for some services. We agree. In fact, it is difficult to discern how a decision to eliminate components of the CHMS program, but continue to pay for CHMS-like services, is anything *but* a change in the methods and procedures for payment of such services.

"[T]he remedy for a procedural due process violation is defined by the extent of the injury that resulted from the denial of constitutionally required process." Hopkins v. Saunders, 199 F.3d 968, 979 (8th Cir. 1999) (citing Carey v. Piphus, 435 U.S. 247, 263-64 (1978)). Since this case involves a prospective due process violation, we look to whether the injunction adequately addresses what would

---

[5]ADHS directs us to 42 C.F.R. § 447.205 in support of its position. We recognize that this regulation requires state Medicaid agencies to provide public notice of proposed changes in its methods for setting payment rates. We fail to see how this is inconsistent with our view that changes to the methods and procedures related to payment, as opposed to payment rates, also implicate the principles detailed in the equal access provision of the Medicaid Act.

otherwise be a denial of the Plaintiffs' constitutional rights. The district court held that "[b]efore the Defendants can terminate Medicaid payment for [CHMS] services, they *must* conduct a proper study and assure the citizens of Arkansas that the factors of economy, efficiency, quality of care and equal access will not be jeopardized." (Dist. Ct. Order of November 27, 2002, at 12.) Such an order permits the procedural due process issue to be revisited following completion of the study while remaining true to the Medicaid Act's equal access provision. We find no error in the injunction as so limited.

## II.   SUBSTANTIVE DUE PROCESS

The district court found that ADHS sought to terminate portions of the CHMS program for improper reasons and that this decision would result in a loss of service for developmentally delayed children. ADHS's consistent attempts to neglect the needs of developmentally delayed children and its proposed restructuring of the CHMS program "shock[ed] the conscience of the court" (Dist. Ct. Order of Nov. 27, 2002, at 15) (internal quotation marks omitted)), resulting in a substantive due process violation. It thus enjoined ADHS from changing the CHMS program, or moving CHMS-like services "off-plan" at all.

We must first determine whether the district court's substantive due process ruling has exceeded the contours of our remand. In our earlier opinion, we "reverse[d] the district court's holding to the extent that it require[d] that CHMS early intervention day treatment services be specifically included in the State [Medicaid] Plan." Pediatric Specialty Care, Inc., 293 F.3d at 480. We permitted ADHS to terminate the CHMS program because it was obligated to keep paying for CHMS-like services under the Medicaid Act. Id. We then remanded the matter to the district court with instructions to "consider the plaintiffs' procedural due process claim." Id. at 481. We did not provide any direction to the district court as to the Plaintiffs' substantive due process claim.

It is well settled that when a matter is decided by this court, it becomes the law of the case; the district court is not free on remand to reconsider any question finally disposed of by the court of appeals. Klein v. Arkoma Prod. Co., 73 F.3d 779, 784-85 (8th Cir. 1996). The district court remains free, however, to decide any issue "not expressly or impliedly disposed of on appeal." In re Usery, 242 B.R. 450, 457 (B.A.P. 8th Cir. 1999) (citing Paull v. Archer-Daniels-Midland Co., 313 F.2d 612, 617 (8th Cir. 1963)). In our prior opinion, the issue presented was whether "the Medicaid Act requires Arkansas to provide early intervention day treatment services," Pediatric Specialty Care, Inc., 293 F.3d at 480, since the district court had specifically limited its earlier ruling to the question of the Plaintiffs' rights under the Medicaid Act, see Pediatric Specialty Care, Inc., v. Ark. Dep't of Human Servs., No. 4:01CV00830WRW, slip op. at 14 (E.D. Ark. Dec. 18, 2001) ("Because I find in favor of the plaintiffs on the federal statutory claim, I do not need to address the procedural and substantive due process claims made by the plaintiff."). Our instruction to the district court to consider the Plaintiffs' procedural due process claim on remand did not restrict its decision to *only* that matter. The Plaintiffs' substantive due process claim remained unresolved, and it was within the province of the district court to entertain that claim on remand.

Under the rubric of the substantive due process clause, the Constitution prohibits "'the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)).

> Thus, substantive due process claims are analyzed under two tests. First, the state is forbidden from infringing certain "fundamental" liberty interests at all–no matter what process is provided–unless the infringement is narrowly tailored to serve a compelling state interest. Second, the state's conduct must shock the conscience or otherwise

offend our judicial notions of fairness, or must be offensive to human dignity.

Brown v. Nix, 33 F.3d 951, 953 (8th Cir. 1994) (citations omitted).

The Plaintiffs' claim does not fall within the first of these categories, for such claims are typically limited to rights that are constitutionally rooted and considered fundamental. See Putnam v. Keller, 332 F.3d 541, 548 (8th Cir. 2003) (detailing the rights recognized by the Supreme Court as giving rise to substantive due process claims). The question then is whether ADHS engaged in such egregious conduct that it rightly shocked the district court's judicial conscience. The district court found that for years ADHS had been trying to curtail the services to special needs children for unsound reasons. We share the district court's concern about such conduct, and reiterate that "[t]he state may not shirk its responsibilities to Medicaid recipients" by making services difficult for recipients to access. Pediatric Specialty Care, Inc., 293 F.3d at 481. In our prior opinion, however, we recognized that ADHS was seeking to restructure the CHMS program in part "[d]ue to a budget shortfall." Id. at 476. Testimony and exhibits established that Arkansas expected to realize a four to six million dollar savings by cutting the program. ADHS has unequivocally stated that it would keep paying for CHMS-like services "off-plan." In fact, it is specifically required to keep providing these services pursuant to our prior opinion. See id. at 480-81 (holding that ADHS must continue to provide CHMS-like services, including day treatment therapeutic services, under the Medicaid Act's early and periodic screening, diagnosis, and treatment mandate). Given these circumstances, we simply cannot affirm an injunction based on the Plaintiffs' substantive due process claim, and reverse the district court on that point. We stress that this decision is independent of our prior ruling that the Plaintiffs enjoyed a right to CHMS-like services under the Medicaid Act; ADHS remains bound by that ruling, and this opinion should not be read to absolve ADHS of that responsibility. We further note that if ADHS chooses to perform the impact study required by the district court and affirmed herein, new

issues may come to light as to whether cutting CHMS services would then result in a substantive due process violation. That issue is not before us now, and this opinion should not be read as precluding the Plaintiffs from raising such matters at the appropriate time.

## III. CMS'S APPEAL

Following issuance of its order granting the Plaintiffs' request for an injunction, the district court issued a second order extending the injunction to CMS. The order required CMS to continue providing Federal Financial Participation[6] for CHMS services. CMS was never a party to the underlying action and did not file any documents with the district court seeking to void the order. Instead, it appealed directly to us. The Plaintiffs moved to dismiss the appeal because CMS did not intervene below, and this court denied the motion by order dated March 28, 2003. The Plaintiffs have moved for reconsideration. Having fully considered the matter, we again deny the motion to dismiss because although CMS did not intervene below, it is directly and adversely affect by the injunction. In re Piper Funds, Inc., 71 F.3d 298, 300-01 (8th Cir. 1995); see also Jenkins v. Missouri, 967 F.2d 1245, 1247 (8th Cir. 1992) (stating "a non party may appeal an injunction that purports to bind the non party").

The district court extended its earlier injunction regarding the CHMS program to CMS pursuant to Federal Rule of Civil Procedure 65. But this rule merely binds injunctions on parties and "those persons in active concert or participation with them." Fed. R. Civ. P. 65(d). We fail to see how CMS could be considered to have worked in concert with ADHS to terminate the CHMS program. CMS is the federal

---

[6]According to CMS, Federal Financial Participation equates to "essentially federal matching funds" for state programs. (CMS Br. at 19.) For a detailed description of the method by which states receive such payment, see 42 U.S.C. § 1396b.

regulatory authority for the Medicaid program, and is in charge of assuring that states comply with the requirements of the Medicaid Act. In that capacity, CMS and ADHS corresponded about ADHS's desire to change its state Medicaid plan, and CMS eventually agreed to allowed that CHMS-like services be moved "off-plan." The fact that CMS approved termination of the CHMS program, however, does not transform it into an active participant in the decision. Rather, CMS's role as federal administrator of the Medicaid program appears supervisory. This conclusion is buttressed by CMS's ability to withhold Federal Financial Participation in the event of a state's noncompliance with the requirements of the Medicaid Act.[7] Since CMS was not a party to the underlying action and did not actively participate in the decision to terminate the CHMS program within the meaning of Rule 65, we reverse the injunction as it extends to CMS.[8]

## CONCLUSION

The district court enjoined Arkansas, through its Department of Human Services, from restructuring its Child Health Management Services program, due to procedural and substantive due process concerns. We affirm the district court insofar as it ordered Arkansas to continue the program until a full impact study on the effect of terminating the program is completed. Because the Plaintiffs remain the prevailing parties in their action against ADHS, we affirm the district court's award of costs and

---

[7]We note that if the injunction were to stand against CMS, the district court would have usurped CMS's authority to deny payment for CHMS services, even if ADHS were not entitled to the money due to noncompliance.

[8]The practical effect of this ruling may be nominal, since at oral argument the parties agreed that CMS had always paid its share for CHMS services, and CMS affirmed that it had no intention to cut off Federal Financial Participation for state claims.

attorney fees.[9]  On the basis of the current record, we reverse the district court's injunction as it related to the Plaintiffs' substantive due process claim and as it extended to the Center for Medicare & Medicaid Services.  We remand for proceedings consistent with this opinion.

BYE, Circuit Judge, concurring.

I fully endorse our analysis and conclusions in resolving this appeal.  I write to reiterate the district court's findings of fact which Pediatric I left undisturbed and which therefore continue to inform the law of the case.  See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 479 (8th Cir. 2002) ("Upon review of the entire record, we find that the district court's factual findings regarding CHMS services are not clearly erroneous.").

First, CHMS clinics are the sole providers of early intervention day treatment services in the state of Arkansas.  Id. at 481.  Second, "therapy services not provided in conjunction with CHMS day treatment services will not result in the maximum reduction of [recipients'] developmental disabilities or restoration of their best functional level, as is mandated by § 1396d(a)(13)" of the Medicaid Act.  Id. at 479.  It follows non-CHMS providers lack the capacity to provide the combination of day treatment and therapy services so as to satisfy the statutory mandate.

On the other hand, CHMS clinics do provide such a combination of services.  Id.  Consequently, while the Arkansas Department of Human Services (ADHS) can theoretically comply with its statutory mandate by providing CHMS-*like* services through any provider, in practice ADHS must continue using CHMS clinics

---

[9]ADHS did not challenge the amount awarded by the district court, but rather sought an order vacating the award in its entirety in the event that it prevailed on appeal.

-14-

*themselves*, at least until such a time as other similarly equipped providers become available.  See id. at 481 ("Because CHMS clinics are the only providers of early intervention day treatment, Arkansas must reimburse those clinics.").  In turn, any study of ADHS's proposal to shift services off-plan will necessarily evaluate the impact on CHMS clinics and their ability to continue providing day treatment and therapy services in a manner that complies with the statutory mandate.

In summary, § 1396d(a)(13) imposes certain requirements on ADHS, and only CHMS clinics provide day treatment and therapy services meeting those requirements.  To comply with the injunction here affirmed and also stay within its statutory mandate, therefore, ADHS must study the impact of its proposal on CHMS clinics.

_____