# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3923

_____

In re: Tri-State Financial, LLC

*Debtor*

------------------------------

George Allison; Frank Cernik; Phyllis Cernik; Chris Daniel; Amy Daniel;
Distefano Family LTD Partnership; Timothy Jackes; George Kramer; Bernie
Marquardt; John Hoich; Denise Hoich;

*Appellant*s

v.

Centris Federal Credit Union; Thomas D. Stalnaker, Trustee

*Appellee*s

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 16, 2017
Filed: March 16, 2018

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

A group of investors appeals after the district court[1] affirmed the bankruptcy court's[2] finding that funds the investors transferred to Tri-State Financial, LLC (TSF) are part of TSF's Chapter 7 bankruptcy estate. We affirm.

## I. Background

After Tri-State Ethanol (TSE) filed for Chapter 11 bankruptcy protection, a group of investors (Omaha Group) formed TSF, a shell corporation designed solely to finance TSE's continued operations until a Chapter 11 plan could be approved. Omaha Group transferred $2 million to TSF; TSF then transferred nearly $800,000 of those funds to TSE and $1.19 million to one of TSE's vendors. TSE subsequently converted its bankruptcy case into one under Chapter 7, and TSF filed claims seeking to recover the $2 million from TSE. TSF's claim to the nearly $800,000 was treated as a first-priority administrative claim, and its claim to the remaining $1.19 million was treated as a general unsecured claim subordinated to all other unsecured claims. The administrative claim was approved, and TSE's trustee paid the nearly $800,000 to TSF.

TSF later filed for Chapter 11 bankruptcy protection, and its trustee was able to recover the $1.19 million from TSE. Omaha Group informed TSF's trustee the funds were not part of TSF's bankruptcy estate, and demanded their return. TSF's trustee initiated this adversarial proceeding to determine whether the $1.19 million is part of TSF's bankruptcy estate. Omaha Group argues the funds are not estate property because TSF was merely holding them in trust. TSF's trustee and Centris

---

[1]The Honorable Judge Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

[2]The Honorable Shon Hastings, United States Bankruptcy Judge for the District of North Dakota, sitting by designation.

Federal Credit Union (Centris)[3] assert the funds are part of the bankruptcy estate. They also contend that various Omaha Group investors have released any claims they may have had to the funds, and that Omaha Group should be judicially estopped from claiming any interest in them.

United States Bankruptcy Judge Timothy J. Mahoney held a hearing at which various TSF business records were introduced. James Jandrain, who is Chairman of TSF's Board of Managers and an Omaha Group investor, testified that Omaha Group transferred the funds to TSF with the understanding they would be held in trust. Two TSF bookkeepers testified that TSF was formed for the sole purpose of funding TSE while it was in bankruptcy. A forensic accountant opined that the funds should have been treated as equity. Judge Mahoney found that TSF held the $1.19 million in trust, and thus, that the funds were not part of its bankruptcy estate.

Centris and TSF's trustee appealed to the Bankruptcy Appellate Panel (BAP), which reversed and remanded the case for further proceedings. In re Tri-State Fin., LLC, 512 B.R. 209, 210–12 (8th Cir. B.A.P. 2014). The BAP observed that Judge Mahoney had not resolved the judicial estoppel and release issues. Id. at 211–12. The BAP declined to "interpret [Judge Mahoney's] silence as an implicit rejection" of Centris and TSF's arguments on those issues. Id. at 212. It instead decided to give "the bankruptcy court an opportunity to consider those arguments" in the first instance and "to explain its reason for accepting or rejecting them." Id. In light of this decision, the BAP also declined to reach the issue of whether the funds were estate property, as "any consideration of [that] issue [was] premature." Id. at 211.

On remand, the case was reassigned to United States Bankruptcy Judge Shon Hastings because Judge Mahoney had since retired. Judge Hastings entered an order finding that the $1.19 million was part of TSF's bankruptcy estate. Specifically,

_____

[3]Centris has a security interest in all TSF assets.

Judge Hastings concluded that Omaha Group had not shown by clear and convincing evidence that the funds were held by TSF in a trust. Instead, she concluded that, more likely than not, Omaha Group initially intended the $2 million to be a capital contribution and assumed—but did not take necessary steps to guarantee—they would receive equity shares in exchange. Judge Hastings found that the funds were later treated as a loan after TSE's Chapter 11 plan was not approved and TSF shareholders opposed treating the $2 million as capital. Relying primarily on the documentary evidence and discounting the lay witnesses' testimony as "self-serving," Judge Hastings found that the $1.19 million was loan proceeds and thus part of the bankruptcy estate.

Omaha Group appealed to the BAP, arguing that Judge Hastings had erred by revisiting Judge Mahoney's factual findings, and had thereby exceeded the scope of the BAP's mandate and violated the law-of-the-case doctrine. Omaha Group also took issue with the fact that Judge Hastings had made factual findings without first certifying her familiarity with the record and giving the parties an opportunity to recall witnesses whose testimony was both material and disputed, a procedure required of successor judges under Fed. R. Civ. P. 63 and Fed. R. Bankr. P. 9028. The BAP agreed that Judge Hastings had not complied with Rules 63 and 9028, and remanded the case with instructions to comply with those rules on remand. In re Tri-State Fin., LLC, 519 B.R. 759, 765–67 (8th Cir. B.A.P. 2014). The BAP noted, however, that Judge Hastings had not exceeded the scope of its first mandate, as it had not explicitly or implicitly adopted any of Judge Mahoney's findings when it remanded the case to the bankruptcy court the first time. Id. at 765.

On remand, Judge Hastings entered an order certifying her familiarity with the record and directing the parties to identify any witnesses they sought to recall. No one took advantage of that opportunity. Judge Hastings then entered an order in which she again concluded that Omaha Group had not shown that the funds were held in a trust, and that the $1.9 million was thus part of TSF's bankruptcy estate. In re

-4-

Tri-State Fin., LLC, 526 B.R. 311, 315–29 (Bankr. D. Neb. 2015). Omaha Group then appealed to the district court, which affirmed; several Omaha Group investors (Appellants) now appeal to this court.

## II. Discussion

First, Judge Hastings did not exceed the scope of the BAP's mandate by revisiting Judge Mahoney's factual findings. "The issue of whether the bankruptcy court exceeded the mandate . . . on remand is a question of law subject to de novo review." In re Usery, 242 B.R. 450, 456 (8th Cir. B.A.P. 1999), aff'd, 242 F.3d 378 (8th Cir. 2000) (unpublished table opinion); see Grass v. Reitz, 749 F.3d 738, 741 (8th Cir. 2014). "When a case has been decided . . . on appeal and remanded, every question decided by the appellate court, whether expressly or by necessary implication, is finally settled and determined, thus creating a mandate for the lower court." Usery, 242 B.R. at 457 (emphasis omitted). "The mandate of the appellate court is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue that was not expressly or impliedly disposed of on appeal." Id. The BAP's mandate did not expressly or impliedly resolve the issue of whether the $1.19 million was property of TSF's bankruptcy estate. To the contrary, the BAP stated that "any consideration of [that] issue [was] premature."

Judge Hastings also did not abuse her discretion by declining to apply the law-of-the-case doctrine. "Law of the case is a doctrine of discretion, and thus, we review for an abuse of discretion a lower tribunal's decision not to defer to previous rulings in the same case." Estrada-Rodriguez v. Lynch, 825 F.3d 397, 402 (8th Cir. 2016) (citation omitted). Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Alexander v. Jensen-Carter, 711 F.3d 905, 909 (8th Cir. 2013) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). "This principle applies to both appellate decisions and [trial] court decisions that have not been

appealed." Id. However, on remand from an appellate court, a trial court is bound by its own prior rulings only to the extent the appellate court explicitly or implicitly adopted those findings in resolving the appeal. Usery, 242 B.R. at 457. "A successor judge steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom, as the first judge. To the extent that a trial judge can alter a previous ruling, so too can a successor judge . . . ." Exxon Corp. v. United States, 931 F.2d 874, 878 (Fed. Cir. 1991). The BAP did not—explicitly or implicitly—adopt Judge Mahoney's findings as to whether TSF held the funds in trust; quite the opposite, it clearly declined to resolve any issues. Therefore, Judge Hastings was free to revisit Judge Mahoney's factual findings on remand from the BAP.

Finally, Judge Hastings did not clearly err in finding that Appellants failed to show, by clear and convincing evidence, that TSF held the funds in trust. We review the bankruptcy court's findings of fact for clear error and its legal determinations de novo. In re Vote, 276 F.3d 1024, 1026 (8th Cir. 2002). Appellants urge us to forego our well-established clear-error standard of review for bankruptcy courts' factual findings because Judge Hastings did not observe the witnesses' hearing testimony. But Judge Hastings gave Appellants an opportunity to recall witnesses to supplement their testimony, and they declined to do so. Appellants thereby forfeited any argument as to our standard of review based on this reasoning.

"Under 11 U.S.C. § 541(a)(1), the bankruptcy estate is comprised of 'all of the debtor's legal and equitable property interests that existed as of the time that the bankruptcy petition is filed.'" In re Webb, 742 F.3d 824, 828 (8th Cir. 2014) (quoting In re Mahendra, 131 F.3d 750, 755 (8th Cir. 1997)). "Bankruptcy courts look to state law to determine the nature and extent of a debtor's interest in particular property because property interests are created and defined by state law." Id. (cleaned up). In the absence of written trust documents, Nebraska courts require that the creation of a trust and its terms be shown by clear and convincing evidence. Neb. Rev. Stat.

§ 30-3833; Brtek v. Cihal, 515 N.W.2d 628, 640 (Neb. 1994); Holbein v. Holbein, 30 N.W.2d 899, 906 (Neb. 1948). "Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." Brtek, 515 N.W.2d 640.

The record contains some evidence that TSF held the funds in a trust. Jandrain testified that the Omaha Group investors intended that TSF hold the funds in trust. The bookkeepers testified that TSF was created solely to operate as a conduit to fund TSE during its Chapter 11 bankruptcy. And TSF's general ledger shows that it treated the $2 million from Omaha Group differently than it treated capital contributions it received from other investors. Thus, the record contains some support for Judge Mahoney's conclusion that the funds fell outside of TSF's bankruptcy estate.

However, Judge Hastings's conclusion that the funds were not held in trust also finds support in the record. None of the documentary evidence specifically refers to a trust, defines the duties of a trustee, or identifies TSF as a trustee. Judge Hastings correctly recognized that Jandrain's testimony was self-serving, as he was both the Chairman of TSF's Board and an Omaha Group investor. There is also substantial evidence that Omaha Group initially intended the funds to be a capital contribution, and that Omaha Group and TSF later treated them as a loan. Initially, TSF's general ledger reflects that it treated the $2 million as equity. And the forensic accountant testified that the $2 million should have been treated as equity. Other facts tend to show a creditor–debtor relationship: TSF agreed to pay Omaha Group interest on the $2 million, TSF paid Omaha Group investors more than $450,000 in loan interest expenses they incurred in the transfer, and TSF retained $10,000 in interest the funds earned while deposited in its account.

Moreover, TSF filed its claim to the $2 million in TSE's bankruptcy case in its own name—as opposed to Omaha Group's name or on behalf of its investors—and

emails between Jandrain and TSF's attorney reveal that this decision was deliberate. In fact, in an email to TSF's attorney, Jandrain wrote, "Omaha Group loaned $2.0M (not a capital contribution) [to TSF] during [TSE's] bankruptcy." Omaha Group was notified of—and did not object to—TSF's claim to the $2 million in the TSE case. None of its investors filed individual claims. Several Omaha Group investors then participated in a meeting at which they were told the $2 million "was going to be converted to equity upon confirmation of [TSE's] reorganization plan" but "[w]hen the plan was not approved, the money remained as a loan." When its administrative claim was approved, TSF deposited the nearly $800,000 into its own account and later disbursed it to Omaha Group investors only. A letter accompanying those disbursements stated: "Any unpaid portion of our $2,000,000 loan that is not paid from [TSE's] trustee will eventually be paid to us by [TSF]." For these reasons, among others, substantial evidence supports Judge Hastings's conclusion that the funds were most likely intended to be a capital contribution, but were ultimately loan proceeds. "A factual finding supported by substantial evidence, as well as a [trial] court's choice between two permissible views of the evidence, are not clearly erroneous." Richardon v. Sugg, 448 F.3d 1046, 1052 (8th Cir. 2006). Therefore, Judge Hastings's factual findings are not clearly erroneous.[4]

## III. Conclusion

Accordingly, the judgment of the district court is affirmed.

_____

_____

[4]We thus need not reach the release or estoppel issues.